IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

| | |
|---|---|
| WEST VIRGINIA HIGHLANDS CONSERVANCY, WEST VIRGINIA RIVERS COALITION, and SIERRA CLUB, | |
| Plaintiffs, | |
| v. | CIVIL ACTION NO. 1:11-cv-71 |
| MONONGAHELA POWER CO. d/b/a   FIRSTENERGY CORP. | |
| Defendant | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND FOR CIVIL PENALTIES

## INTRODUCTION

1.       This is an action for declaratory judgment and mandatory injunctive relief and for civil penalties against defendant Monongahela Power Co., currently doing business as FirstEnergy.  Plaintiffs allege violations of the Federal Water Pollution Control Act, 33 U.S.C. § 1251 et seq. (hereinafter "the Clean Water Act" or the "CWA").

2.       As detailed below, Plaintiffs allege that Defendant discharged and continues to discharge arsenic—a pollutant designated as toxic by the U.S. Environmental Protection Agency, 40 C.R.R. § 401.15—into waters of the United States in persistent violation of the conditions and limitations of a West Virginia/National Pollution Discharge Elimination System ("WV/NPDES") Permit issued to Defendant by the State of West Virginia pursuant

1

to § 402 of the CWA (33 U.S.C. § 1342). Such discharges, exceeding the permitted limits, are also violations of § 301 of the CWA (33 U.S.C. § 1311).

## JURISDICTION AND VENUE

3. Pursuant to 28 U.S.C. § 1311 (federal question jurisdiction) and 33 U.S.C. § 1365 (the Clean Water Act's citizen's suit provision) this Court has jurisdiction over this action.

4. By letter sent certified mail and postmarked February 4, 2011, Plaintiffs gave notice of the violations and its intent to file suit to Defendant, the United State Environmental Protection Agency ("EPA"), and the West Virginia Department of Environmental Protection ("WVDEP"), as required by § 505(b)(1)(a), 33 U.S.C. § 1365(b)(1)(a).

5. More than sixty days have passed since the notice was served and neither EPA nor the WVDEP has commenced or has diligently prosecuted a civil or criminal action to require compliance. Moreover, neither EPA nor WVDEP commenced an administrative penalty action under Section 309(g) of the CWA, 33 U.S.C. § 1319(g), or comparable state law to redress the violations prior to the issuance of the February 4, 2011 notice letter. Venue in this District and at this Division is proper pursuant to 33 U.S.C. § 1365(c)(1) because the sources of the Clean Water Act violations—Outlets 003 and 005 of WV/NPDES permit WV0075281 are each located in Preston County, West Virginia.

## PARTIES

6. Defendant, Monongahela Power, d/b/a First Energy, is a corporation chartered in Ohio and doing business in Preston County, West Virginia.

7. Defendant is a person within the meaning of § 502(5) of the Clean Water Act, 33 U.S.C. § 1362(5).

8.     At all relevant times Defendant owned and operated the Albright Power Station and associated Active Solid Waste Disposal Site, which is regulated by WV/NPDES Permit WV0075281 and which discharges pollutants from three separate Outlets, each subject to specific effluent limitations included in the permit.

9.     Plaintiff West Virginia Highlands Conservancy, Inc., (hereinafter "WVHC") is a nonprofit organization incorporated in West Virginia.  It has approximately 2,000 members. It works for the conservation and wise management of West Virginia's natural resources.

10.    Plaintiff West Virginia Rivers Coalition makes its mission the conservation and restoration of West Virginia's exceptional rivers and streams.  It not only seeks preservation of high quality waters but also the improvement of waters that should be of higher quality. It has approximately 2,500 members.

11.     Plaintiff Sierra Club is a nonprofit corporation incorporated in California, with more than 600,000 members and supporters nationwide and approximately 1,900 members who reside in West Virginia and belong to its West Virginia Chapter.  The Sierra Club is dedicated to exploring, enjoying, and protecting the wild places of the Earth; to practicing and promoting the responsible use of the Earth's resources and ecosystems; to educating and enlisting humanity to protect and restore the quality of the natural and human environment; and to using all lawful means to carry out these objectives.  The Sierra Club's concerns encompass the exploration, enjoyment and protection of surface waters in West Virginia.

12.    Plaintiffs' members suffer injuries to their aesthetic, recreational, environmental, and/or economic interests as a result of Defendant's unlawful discharge of pollutants. Plaintiffs' members boat, fish, wade, observe wildlife and/or otherwise use the waters affected by Defendant's discharges and are harmed by the high levels of pollutants which

Defendant is discharging in violation of its permits. Plaintiffs' members refrain from swimming, wading, fishing, boating or engaging in other activities, and experience lessened enjoyment of the activities they engage in as a result of concerns over Defendant's pollutants. Plaintiffs' members are also concerned about the impacts of pollution from discharges on their families, friends, neighbors and local wildlife. Many of Plaintiff's members have particular concerns about the impacts of pollution on Daugherty Run—a high quality stream used by both boaters and trout fishers. If Defendant's discharges ceased, or were bought into compliance with their permitted effluent limits, the harm to Plaintiffs' members could be redressed. Injunctive relief and/or civil penalties would redress these injuries by preventing and/or deterring future violations.

13. Plaintiffs' members additionally have an interest in protecting the environmental integrity of the Cheat River and its tributaries, including Daugherty Run. These interests extend to curtailing unlawful discharges into these waters.

14. At all relevant times, Plaintiffs were and are "persons" as that term is defined by the Clean Water Act, 33 U.S.C. § 1362(5).

## STATUTORY AND REGULATORY FRAMEWORK

15. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits the "discharge of any pollutant by any person" into waters of the United States except in compliance with the terms of a permit, such as a NPDES Permit issued by the EPA or an authorized state pursuant to § 402 of the CWA, 33 U.S.C. § 1342.

16. Section 402(a) of the CWA, 33 U.S.C. § 1342(a) provides that the permit issuing authority may issue an NPDES Permit which authorizes the discharge of any pollutant directly into waters of the United States, upon the condition that such discharge will meet all

applicable requirements of the CWA and such other conditions as the permitting authority determines necessary to carry out the provisions of the CWA.

17. Section 402(a) of the CWA, 33 U.S.C. § 1342, directs the Administrator of EPA to prescribe conditions for NPDES permits to ensure compliance with the requirements of the CWA, including conditions in data and information collection, reporting, and other such requirements as the Administrator deems appropriate.

18. Effluent limitations, as defined in Section 502(11) of the CWA, 33 U.S.C. § 1362(11), are restrictions on quantity, rate and concentration of chemical, physical, biological, and other constituents of wastewater discharges. Effluent limitations are among the conditions and limitations prescribed in NPDES Permits issued under Section 402(a) of the CWA, 33 U.S.C. § 1342(a).

19. Section 303(a) of the CWA, 33 U.S.C. § 1313(a), requires that states adopt ambient water quality standards and establish water quality criteria for particular water bodies which will protect the designated uses of the water. When technology-based effluent limitations are insufficient to keep receiving waters within those levels, the permit must include more stringent water quality based effluent limits ("WQBELs") which reflect the water quality standards and criteria. 33 U.S.C § 1311(b)(1)(C).

20. At all times relevant to this complaint, the State of West Virginia has been authorized by EPA to administer an NPDES program for regulating the discharges of pollutants into waters of West Virginia. Permits issued under this program are known as WV/NPDES permits.

21. Holders of WV/NPDES Permits are required to monitor their discharges and report their average monthly discharges and maximum daily discharges on a monthly or

quarterly basis. Those reports are called "Discharge Monitoring Reports" or "DMRs."

22.     Section 505(a) of the CWA, 33 U.S.C. § 1365(a), authorizes any "citizen" to "commence a civil action on his own behalf. . . against any person . . . who is alleged to be in violation of. . . an effluent standard or limitation under this chapter."

23.     Section 505(f) of the CWA, 33 U.S.C § 1365(f), defines an "effluent standard or limitation under this chapter," for purposes of the citizen suit provision in § 505(a) of the CWA, 33 U.S.C. § 1365(a), to mean, among other things, an unlawful act under Section 301(a), 33 U.S.C. § 1311(a) of the CWA, a WQBEL and "a permit or condition thereof issued" under § 402, 33 U.S.C. § 1342, of the CWA.

24.     In an action brought under Section 505(a) of the CWA, 33 U.S.C. § 1365(a), the district court has jurisdiction to order the defendant to comply with the CWA and to assess civil penalties under § 309(d) of the CWA, 33 U.S.C. § 1365(d). See 33 U.S.C. § 1365(a).

25.     Section 309(d) of the CWA, 33 U.S.C. § 1319(d), provides that any person who violates § 301 of the CWA, 33 U.S.C. § 1311, or violates any permit condition or limitation in a permit issued pursuant to § 402 of the CWA, 33 U.S.C. § 1342, shall be subject to a civil penalty payable to the United States of up to $25,000 per day for each violation.

26.     Pursuant to the Federal Civil Penalties Adjustment Act of 1990, 28 U.S.C. § 2461, as amended by the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3701, the Court may assess a civil penalty of $37,500 per day for each violation that occurred after January 12, 2009.

27.     The costs avoided from non-compliance are one factor to be considered in the calculation of civil penalties. Defendant has avoided substantial costs since beginning its illegal discharges because it has not implemented the necessary treatment measures that

would bring it into compliance.

28. Under § 505(d) of the CWA, 33 U.S.C. § 1365(d), the court "may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such an award is appropriate."

## FACTS

29. At all relevant times, Defendant has held WV/NPDES Permit Number WV0075281 to regulate water pollution from its Albright Power Station Active Solid Waste Disposal Site.

30. WV/NPDES Permit Number WV0075281 places limits on the discharges of arsenic. Defendant may discharge from Outlets 003, 004, and 005, into unnamed tributaries of Daugherty Run, itself a tributary of the Cheat River—each a navigable water of the United States.

31. The WVDEP most recently renewed permit WV0075281 on February 26, 2010; Interim effluent limits became effective that day will remain effective until February 26, 2012, when final effluent limitations will take their place.

32. The DMRs Defendant has submitted to WVDEP indicate that Defendant has discharged arsenic in excess of its effluent limitations from Outlets 003 and 005 on 14 separate occasions from July 2010 through November 2010, accruing 249 days of violations. These violations are shown in the table below.

| DATE | OUTFALL | POLLUTANT | DISCHARGE | LIMIT |
|---|---|---|---|---|
| July 2010 | 003 | As | 0.012mg/L | 0.01 mg/L (monthly) |
| August 2010 | 005 | As | 0.017 mg/L | 0.01mg/L (monthly) |
| August 19, 2010 | 005 | As | 0.0155 mg/L | 0.015 mg/L (daily) |
| August 31, 2010 | 005 | As | 0.024 mg/L | 0.015 mg/L (daily) |
| September 2010 | 003 | As | 0.015 mg/L | 0.01 mg/L (monthly) |
| September 2010 | 003 | As | 0.019 mg/L | 0.017 mg/L (daily) |
| September 2010 | 005 | As | 0.025 mg/L | 0.01 mg/L (monthly) |
| September 2010 | 005 | As | 0.040 mg/L | 0.015 mg/L (daily) |
| October 2010 | 003 | As | 0.020 mg/L | 0.01 mg/L (monthly) |
| October 2010 | 003 | As | 0.020 mg/L | 0.017 mg/L (daily) |
| October 2010 | 005 | As | 0.015 mg/L | 0.01 mg/L (monthly) |
| November 2010 | 003 | As | 0.019 mg/L | 0.017 mg/L (daily) |
| November 2010 | 003 | As | 0.019 mg/L | 0.01 mg/L (monthly) |
| November 2010 | 005 | As | 0.012 mg/L | 0.01 mg/L (monthly) |

## **CLAIM FOR RELIEF**
(Effluent Discharge Violations of WV/NPDES Permit Number WV0075281)

33.     Plaintiff incorporates by reference all allegations contained in paragraphs 1 through 32 supra.

34.     Defendant's wastewater discharges identified in the above paragraphs are discharges from a point source into navigable waters of the United States within the meaning of § 302 of the CWA, 33 U.S.C. § 1311, which prohibits the discharge of any pollutant by any person, except in compliance with a permit.

35.     The arsenic limits in WV/NPDES Permit Number WV0075281 are "effluent standards or limitations" for purposes of § 505(a)(1) of the Clean Water Act, 33 U.S.C. § 1365(f), because they are conditions of a permit issued under § 402 of the Act, 33 U.S.C. § 1342.

36.     Each and every discharge in excess of the effluent limitations in WV/NPDES Permit Number WV0075281 is actionable under § 505(a)(1) of the Clean Water Act. 33 U.S.C. § 1365(a)(1).

37.     A violation of an average monthly effluent limitation in a permit is considered to

be a violation on each and every day of that month.

38. Defendant's DMRs establish that the company has violated the monthly average or daily maximum effluent limitations for arsenic on Outlets 003 and 005 at least 14 times since its permit was renewed on February 26, 2010. Those 14 instances, detailed in the above chart amount to 249 days of violation.

39. Unless enjoined, Defendant will remain in continuing violation of the Clean Water Act.

40. On information and belief, Plaintiffs allege that Defendant is in continuing and/or intermittent violation of the Clean Water Act as a result of its violations of the effluent limitations in WV/NPDES Permit Number WV0075281 because Defendant has taken no meaningful action to eradicate the underlying cause of the violations.

41. Pursuant to Section 309(d) of the CWA, 33 U.S.C. § 1319(d), Defendant is liable for civil penalties of up to $37,500 for each day of violation of its effluent limits.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order:

(1) Declaring that Defendant, Monongahela Power d/b/a/ FirstEnergy Corp., has violated and is in continuing violation of the Clean Water Act;

(2) Enjoining Defendant from operating its facilities in such a manner as will result in further violations of the effluent limitations in WV/NPDES Permit Number WV0075281;

(3) Ordering Defendant to immediately comply with all effluent limitations, monitoring and reporting requirements, and other terms and conditions of WV/NPDES Permit Number WV0075281;

(4) Ordering Defendant to pay appropriate civil penalties up to $37,500 per day for each

violation;

(5) Awarding Plaintiffs' attorney and expert witness fees and all other reasonable expenses incurred in pursuit of this action; and,

(6) Granting other such relief as this Court deems proper.

Respectfully submitted,

**/s/ Derek O Teaney**
Derek O. Teaney (W.Va. Bar # 10223)
J. Michael Becher (W.Va. Bar # 10588)
Joseph M. Lovett (W.Va. Bar # 6926)
Appalachian Center for the Economy
    and the Environment
PO Box 507
Lewisburg, WV 24901
(304) 382-4798
*mbecher@appalachian-center.org*

Counsel for Plaintiffs