**FILED**

AUG 1 4 2012

U.S. DISTRICT COURT
CLARKSBURG, WV 26301

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
AT CLARKSBURG

WEST VIRGINIA HIGHLANDS
CONSERVANCY, WEST VIRGINIA
RIVERS COALITION, and SIERRA
CLUB,

             Plaintiffs,

v.                                                 CIVIL ACTION NO. 1:11-cv-71

MONONGAHELA POWER CO.
d/b/a FIRSTENERGY CORP.

             Defendant

## CONSENT DECREE

**I. RECITALS**

    1.    On May 9, 2011, Plaintiffs, West Virginia Highlands Conservancy, West Virginia Rivers Coalition, and Sierra Club (collectively "Plaintiffs") filed this action against Defendant Monongahela Power Co. d/b/a FirstEnergy Corp. ("Mon Power"). Plaintiffs subsequently filed an Amended Complaint, which the Court docketed on January 3, 2012.

    2.    The Amended Complaint alleges that Defendant, Mon Power, has discharged concentrations of arsenic in excess of the effluent limitations contained in the Albright Ash Disposal Facility West Virginia/National Pollutant Discharge Elimination System ("WV/NPDES") Permit No. WV0075281.

1

3. On June 6, 2011, Plaintiffs submitted a 60-day notice of intent to file a citizen suit for alleged violations of Section 404 of the Clean Water Act for failure to have Section 404 permits required for the Albright Ash Disposal Facility.

4. The Parties recognize, and the Court by entering this Consent Decree finds, that the Consent Decree has been negotiated by the Parties in good faith and will avoid further litigation among the Parties, and this Decree is fair, reasonable, and in the public interest. By entering into this Consent Decree, Defendants do not admit any of the allegations set forth in the Complaint or Amended Complaint.

NOW, THEREFORE, with the consent of the Parties, IT IS HERBY ADJUDJED ORDERED AND DECREED as follows:

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over the Parties and over the subject matter of this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction), and 33 U.S.C. § 1365 (CWA) citizen suit provision.

6. Venue is proper in the Northern District of West Virginia pursuant to 28 U.S.C. § 1391(b) and (c) because it is the judicial district in which Defendants are located, reside, and/or do business and the judicial district in which the violations alleged in the Amended Complaint occurred. Venue is appropriate pursuant to 33 U.S.C. § 1365(c)(1) because the sources of the alleged CWA violations are located in the Northern District of West Virginia.

7. For purposes of this Consent Decree, or any action to enforce this Consent Decree, Defendants consent to this Court's jurisdiction over this Consent Decree and consent to venue in this judicial district.

## III. APPLICABILITY

8.  The provisions of this Consent Decree apply to and are binding upon Plaintiffs and those with authority to act on their behalf, including, but not limited to, their officers, directors and staff, upon Defendants and any of their respective successors and/or assigns; and upon other persons or entities otherwise bound by the law.

9.  No transfer of ownership shall relieve Defendants of their obligations to ensure that the terms of this Consent Decree are implemented, provided that prior to any transfer, the Defendant shall provide a copy of this Consent Decree to the proposed transferee and require the transferee to provide written confirmation to the Court acknowledging the terms of the Consent Decree and that the transferee will be bound by those terms.  In such event, Defendant shall no longer be subject to this Consent Decree.  There shall be no requirement to provide written confirmation to the Court if the ultimate parent of Defendant will change as a result of any transaction, but the Defendant owning or operating the facility will not change.  In any event, all transferees, subsequent owners, and operators shall be bound by the terms of this Consent Decree consistent with applicable law.

## IV. DEFINITIONS

10.  Wherever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.  "Amended Complaint" shall mean the First Corrected Amended Complaint for Declaratory and Injunctive Relief and Civil Penalties filed on December 1, 2011 and entered by the Court on January 3, 2012;

b.  "Consent Decree" or "Decree" shall mean this Consent Decree;

c.  "Parties" shall mean Plaintiffs and Defendant collectively;

   d. "Power Plant" or "Plant" shall mean the Albright Power Station located on Route 26, across the Cheat River from the town of Albright;

   e. Albright Ash Disposal Facility shall mean the facility regulated by WV/NPDES permit WV0075281 on the date of this Consent Decree;

   f. "WV/NPDES permit" shall refer to WV/NPDES permit WV0075281 or any other WV/NPDES permit issued to the Albright Ash Disposal Facility.

### V. PLANT CLOSURE

   11. Mon Power agrees, that barring any regulatory decision or regulatory settlement or Force Majeure events as defined in Section XII below which would prevent such action, it will cease Plant operations generating fly-ash, bottom-ash and other by-products of coal combustion no later than September 1, 2012. Mon Power further agrees to seek any necessary regulatory and other approvals to ensure cessation of such Plant operations by September 1, 2012. In the event that regulatory decisions or action by a governmental agency or public regulatory body prevents Mon Power from ceasing Plant operations generating fly-ash, bottom-ash and other by-products of coal combustion by September 1, 2012, Mon Power agrees that it will act in good faith to cease such Plant operations as soon thereafter as reasonably possible.

   12. Mon Power further agrees that it will stop disposing of fly-ash, bottom-ash or other by-products of coal combustion within the Albright Ash Disposal Facility within 90 days of cessation of demolition of the Plant.

   13. Mon Power agrees to request and to diligently pursue appropriate modifications to the applicable WV/NPDES permit to reflect the on-going nature of the discharge that will occur once the closure of the Plant has occurred and conditions at the Albright Ash Disposal Facility have stabilized.

14. Mon Power agrees that it will not enter into any agreement to allow another party to dispose of fly-ash, bottom-ash or other by-products of coal combustion at the Albright Ash Disposal Facility. Nothing in this Consent Decree shall preclude Mon Power from using the Albright Ash Disposal Facility for the disposal of construction and demolition debris or other materials.

## VI. CIVIL PENALTY

15. Defendants shall pay a civil penalty in the amount of $5,000 to the United States as set forth in paragraph 16 below. Together with the Supplemental Environmental Protect ("SEP") to be funded as set forth in Section VII, the payment of this civil penalty is made in settlement of all of Plaintiffs' claims in this action under the CWA for violations occurring prior to the effective date of this Consent Decree.

16. Defendants shall pay the civil penalty due to the United States Treasury within thirty (30) days of the entry of this Consent Decree. That payment shall be made by certified check, bank check, or money order to the Treasurer of the United States and should be sent to the following address: Debt Collection Specialist, Environment and Natural Resources Division, Executive Office, PO Box 775, Ben Franklin Station, Washington, D.C. 20044-7754. The check or money order shall reference *West Virginia Highlands Conservancy v. Monongahela Power*, Civil Action No. 1:11-cv-71 and payment shall be considered paid upon mailing, or direct delivery to the specified address. A copy of the check and cover letter shall be sent to Plaintiffs at the time payment is made, and shall state that payment is being made pursuant to this Decree.

## VII. SUPPLEMENTAL ENVIRONMENTAL PROJECT

17. In addition to the civil penalty set forth in Section VI above, Defendant shall pay a total of $45,000 to The Mountain Institute in order to fund a SEP described in appendix A to this Consent Decree.

18. Defendant shall remit the funds identified in paragraph 17 by certified check, bank check, or money order to The Mountain Institute within thirty (30) days of the entry of this Consent Decree and shall send the funds to the following address:

> The Mountain Institute
> 235 High Street, Suite 706
> Morgantown, WV 26505

The check or money order shall reference *West Virginia Highlands Conservancy v. Monongahela Power* Civil Action no. 1:11-cv-71, and payment shall be considered complete upon mailing, or direct delivery to the specified address. A copy of the check and cover letter shall be sent to Plaintiffs at the time payment is made and shall state that payment is being made pursuant to this Consent Decree.

### VIII. COMPLIANCE REQUIREMENTS

19. This Consent Decree in no way affects or relieves Defendant of its responsibility to comply with applicable federal, state and local laws, regulations and permits, but Plaintiffs shall not seek any remedies under the CWA for violations of arsenic limits applicable to the Albright Ash Disposal Facility so long as this Consent Decree is in effect other than those remedies set forth herein.

20. No later than December 31, 2015 Mon Power must be in compliance with whatever permit limits are in effect for arsenic at the Albright Ash Disposal Facility. The Court may revise this compliance date upon motion of any of the Parties.

21. Mon Power is not prevented from seeking regulatory changes that would affect its limits.

22. Plaintiffs, likewise, are not prevented from opposing regulatory changes that would affect Mon Power's WV/NPDES permit limits.

23. This Consent Decree shall terminate when Defendant 1) achieves 12 consecutive months of compliance with arsenic limits at Outfalls 003 and 005 covered by the WV/NPDES permit and, 2) when all conditions under Section V of this agreement are satisfied.

## IX. STIPULATED PENALTIES

24. Defendant shall be liable for stipulated penalties in the following amounts if it fails to comply with arsenic limits within the WV/NPDES permits by the deadline specified in paragraph 20 of this Consent Decree (the "effective deadline"):

    a. For the first year after the effective deadline: $1,000 per violation of maximum daily limits, $2,000 per violation of average monthly limits;

    b. For the second year after the effective deadline: $2,000 per violation of maximum daily limits, $4,000 per violation of average monthly limits;

    c. For the third year after the effective deadline and thereafter: $4,000 per violation of maximum daily limits, $8,000 per violation of average monthly limits.

25. A daily maximum violation or monthly average violation as reported on Defendant's DMRs shall constitute one (1) violation for purposes of this Section IX such that Defendants shall not be subject to more than one (1) monthly average violation and two (2) daily maximum violations per month at any single outfall.

26. Defendant shall submit stipulated payments due as a result of noncompliance under this Section IX at the end of the thirty (30)-day period following the

conclusion of each calendar quarter (i.e., by April 30, July 31, October 21 and January 31). Defendant shall make payments of 90% of the amount due to The Mountain Institute in the manner described in paragraph 18. Defendant shall make payments of 10% of the amount due to the United States Treasury in the manner described in paragraph 16. Written notice of such payment shall be sent to Plaintiffs.

## X.  COSTS

27.     Within fifteen (15) days of the Effective Date of the Consent Decree, Defendant shall pay an amount of $47,000 in full consideration and settlement of any claim of Plaintiffs for attorneys fees, expert witness fees, costs and expenses incurred up to the Effective Date of the Consent Decree, in accordance with the fee shifting provisions of the CWA.

## XI. EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS

28. This Consent Decree resolves the civil claims of Plaintiffs for the violations alleged in the Amended Complaint, docketed on January 3, 2012, for the alleged arsenic violations of the WV/NPDES permit that were reported on discharge monitoring reports through the effective date of this Consent Decree and that may occur by the deadline specified in paragraph 20 of this Consent Decree and for the alleged violations of Section 404 requirements of the CWA as set forth in the Plaintiffs' 60-day notice dated June 6, 2011.

29. Prior to the deadline specified in paragraph 20 of this Consent Decree, Plaintiffs shall waive all legal and equitable remedies available to enforce discharge limits for arsenic from the WV/NPDES permit, except for enforcement of this Consent Decree.

30. This Consent Decree shall not limit the right of Defendant to pursue regulatory changes or modifications of the WV/NPDES permit, nor shall it limit Plaintiffs right to challenge those regulatory changes or modifications of the permit. Likewise, nothing in this

Consent Decree shall prevent Defendant from pursuing any future CWA section 404 permit for the Albright Ash Disposal Facility, nor shall it prevent Plaintiffs from challenging any future 404 permit application or future activity subject to section 404 of the Clean Water Act.

31. Nothing in this Consent Decree shall impose any obligations upon Mon Power for any facility other than as expressly state herein.

32. Nothing in this Consent Decree shall prevent Plaintiffs from pursuing administrative or civil citizen-suit actions against Mon Power for the operation of any facility other than as expressly stated herein.

33. This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not a party to this Consent Decree.

**XII. FORCE MAJEURE**

34. "Force Majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the reasonable control of Defendant, of any entity controlled by Defendant, or of Defendant's contractors, which delays or prevents the performance of any obligation under this Consent Decree despite Defendant's best efforts to fulfill the obligation. The requirement that Defendant exercises "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential Force Majeure event and best efforts to address the effects of any such event (a) as it is occurring and (b) after it has occurred to prevent or minimize any resulting delay to the extent possible. "Force Majeure" does not include Defendant's financial inability to perform any obligation under this Consent Decree.

35. If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a Force Majeure event, Defendant shall provide notice orally or by electronic or facsimile transmission to Plaintiffs

within five (5) business days of when Defendant first knew that the event might cause a delay. Within 14 days thereafter, Defendant shall provide in writing to Plaintiffs an explanation of the reasons for the delay; the anticipated duration of the delay; and actions taken or to be taken to prevent or minimize the delay.

36. If Plaintiffs agree that the delay or anticipated delay is attributable to a Force Majeure event, the time for performance of the obligations under this Consent Decree that are affected by the Force Majeure event will be extended by Plaintiffs for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the Force Majeure event shall not, of itself, extend the time for performance of any other obligation. Plaintiffs will notify Defendant in writing within 5 business days of the length of the extension, if any, for performance of the obligations affected by the Force Majeure event.

37. If Plaintiffs do not agree that the delay or anticipated delay has been or will be caused by a Force Majeure event, Plaintiffs will notify Defendant in writing of its decision within five (5) business days of its receipt of the Force Majeure claim by Defendant. Any dispute between the Parties over a Force Majeure claim may be resolved by the Court.

**XIII. EFFECTIVE DATE**

38. The Effective Date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court or a motion to enter this Consent Decree is granted, whichever occurs first, as recorded on the Court's docket.

**XIV. RETENTION OF JURISDICTION**

39.     The Court shall retain jurisdiction over this case until termination of this Consent Decree, for the purpose of resolving disputes arising under this Consent Decree or entering orders modifying this Consent Decree, pursuant to Section XV ("Modification") or effectuating or enforcing compliance with the terms of this Consent Decree.

40.     Plaintiffs and Defendant reserve all legal and equitable rights and defenses available to them to enforce or defend the provisions of this Consent Decree.

## XV. MODIFICATION

41.     The terms of this Consent Decree may be modified only by a subsequent written agreement signed by all Parties or upon motion properly presented to the Court. Where the modification constitutes a material change to this Consent Decree, it shall be effective only upon approval by the Court.

## XVI. SIGNATORIES/SERVICE

42.     Each undersigned representative of Plaintiffs and Defendant certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to this document.

43.     This Consent Decree may be signed in counterparts, and its validity shall not be challenged on that basis.

## XVII. INTEGRATION

44.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written,

concerning the settlement embodied herein. Other than deliverables that are subsequently submitted and approved pursuant to this Consent Decree, no other document, nor any representation, inducement, agreement, understanding or promise, constitutes any part of this Consent Decree or the settlement it represents, nor shall it be used in construing the terms of this Consent Decree.

## XVIII. FINAL JUDGMENT

45. Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment of the Court as to Plaintiffs and Defendant. The Court finds that there is no just reason for delay and, therefore, enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

ENTERED: *August 14*, 2012

*/s/ Irene M. Keeley*
IRENE M. KEELEY
UNITED STATES DISTRICT JUDGE

For the Plaintiffs West Virginia Highlands Conservancy, Inc., West Virginia Rivers Coalition, and Sierra Club

/s/ J. Michael Becher                     Dated: May 3, 2012
J. Michael Becher (WVBN 10588)
Derek O. Teaney (WVBN 10223)
Joseph M. Lovett (WVBN 6926)
APPALACHIAN MOUNTAIN ADVOCATES
P.O. Box 507
Lewisburg, WV 24901

304-793-9007

For the Defendant Monongahela Power Company


<u>/s/ David M. Flannery</u>　　　　　　　Dated: May 3, 2012
David M. Flannery, WVBN 1216
Kathy G. Beckett (WVBN 4998)
L. Jill McIntyre (WVBN 8837)
Laura G. Swingle (WVBN 10236)

JACKSON KELLY, PLLC
1600 Laidley Tower
Post Office Box 553
Charleston, West Virginia 25322
304-340-1000